UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically filed*

| | |
|---|---|
| DOE 1, *et al.*<br>　　　Plaintiffs<br><br>v.<br><br>THORNBURY, *et al.*<br>　　　Defendants<br><br>and<br><br>COMMONWEALTH OF KENTUCKY,<br>*ex rel.* ATTORNEY GENERAL DANIEL CAMERON<br>　　　Intervening Defendant | Civil Action No. 3:23-CV-00230-DJH |

### DECLARATION OF KRISTINE W. IN SUPPORT OF INTERVENOR DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Kristine W.,[1] declare as follows:

　　1.　　I am over the age of 18 years and am not a party to this action. I have actual knowledge of the following facts and if called upon to testify to them could and would do so competently. I am submitting this Declaration in support of Intervenor Defendants' opposition to Plaintiffs' Motion for a Preliminary Injunction.

---

[1]　Declarant is submitting this Declaration using an abbreviated last name to protect the privacy of her minor child and other family members.

1

2. My daughter, S., had been diagnosed with OCD, Tourette's Syndrome and bulimia when she began intensive outpatient psychiatric treatment for suicidal ideation at age 14. S. had spent copious amounts of time online during the pandemic lockdown and was influenced by the transgender ideology. She suddenly declared, in a manner which sounded scripted, that she believed she was a boy and wanted to use a male name.

3. When I spoke to my daughter's caregivers, they focused on S. wanting to go by a male name and pronouns. I asked them to address S.'s self-harm, anxiety and bulimia, but instead, they told me that I needed to ask, "How can we help you with your gender identity?"

4. The caregivers continued affirming S.'s perception. During one visit, with S. present, the caregivers stated that transpeople are more likely to commit suicide if they are not affirmed. In another instance, staff at the hospital told me, "You must affirm or she will kill herself." "Do you want live son or dead daughter?" S.'s school counselor made similar statements.

5. Following the inpatient psychiatric treatment, S. returned to seeing psychiatrists and counselors that she had previously been seeing. Her medication was adjusted, she stopped self-harming and her tics were better controlled.

6. I did more research and believed it was important to ground my child in physical reality, so we no longer used the preferred male name and pronouns at home. I told S. that she could change her name if she desired when she was an adult but

until then she did not get to choose her name. S. asked why we would not use her new name when everyone else did.

7. As a result of the comments made by doctors in her presence about how fragile transkids are, S. felt that her father and I cared more about the name than her ideations of suicide. I told S. that no one loved her as much and cared about her mental health more than her parents, who wanted to do what was best for her in the long run, which was to maintain a hold on reality for her.

8. S. asked for testosterone, but we resisted, hoping to delay such decisions until S. became an adult.

9. S. later announced "I'm not a boy – boys are awful" and began dressing on and off as a girl.

10. S. is now 16 years old and has been diagnosed as being neurodiverse. I believe that contributed to her obsessing with trans identification. The black and white thinking that accompanies being neuro-diverse meant that when S. did not fit in as a girl she concluded she must be a boy.

11. It would have done great harm to S. if her father and I had agreed with what she wanted, *i.e.,* testosterone, and followed the doctors' "advice" to go along with S.'s desires. In fact, the more we followed their advice the worse S.'s emotional health became.

12. S. is continuing to desist from her trans identity. She is presenting herself as the girl that she is and more comfortable with her female body.

13. Notably, of 10-15 children in S.'s friend groups, only one identifies as her natal sex. These numbers mimic commonly known social contagions such as anorexia and cutting behavior.

14. It is statistically impossible and improbable that all these children will continue to identify as another gender into adulthood.

15. It is a great tragedy to permit the medical establishment to push children into irreversible treatments and to pit children against their parents, even to the point of threatening the parents that they will have a dead child if they do not go along.

16. These coercive tactics are ruining families, undermining parental authority to make medical and mental health decisions to protect their children from harm, and harming vulnerable children. The coercive manipulation I experienced and that I have observed other parents experiencing eliminates any pretext that there is informed consent.

17. Therefore, these "gender-affirming" medical interventions should not be available for children. Laws such as Kentucky's SB 150 that do not allow these treatments to be given to minors should be upheld in the interest of protecting children. This law will effectively force the mental health community to focus on the true mental health issues our children are dealing with.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 8, 2023.

       /s/ *Kristine W.*
      Kristine W.