UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISIVLLE DIVISION

*Electronically filed*

| | |
|---|---|
| DOE 1, *et al.*<br>    Plaintiffs<br><br>v.<br><br>THORNBURY, *et al.*<br>    Defendants<br><br>and<br><br>COMMONWEALTH OF KENTUCKY,<br>*ex rel.* ATTORNEY GENERAL DANIEL CAMERON<br>    Intervening Defendant | Civil Action No. 3:23-CV-00230-DJH |

**COMMONWEALTH OF KENTUCKY'S REPLY TO PLAINTIFFS' RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY**

On July 8, 2023, the Commonwealth of Kentucky filed a notice of supplemental authority (DN 73) to provide the Court with a copy of the Sixth Circuit Court of Appeals' published opinion rendered in *L.W. v. Skrmetti*, No. 23-5600. By that opinion, the Sixth Circuit Court of Appeals stayed an injunction of a law in Tennessee that, like Senate Bill 150, prohibits providing puberty blockers and cross-sex hormones to treat children with gender dysphoria. In light of *L.W.*, the Commonwealth noted that the Court should immediately grant the Commonwealth's motion for a stay of the Court's preliminary injunction pending its appeal to the Sixth Circuit Court of Appeals (DN 66). The Plaintiffs thereafter filed

1

a response to the Commonwealth's notice of supplemental authority (DN 74) after which the Court ordered the Commonwealth to reply (DN 76). The Plaintiffs then filed an amended response (DN 77). The Commonwealth hereby complies with the Court's order.

Most importantly, the Plaintiffs do not dispute that the preliminary injunction must be narrowed to only the named parties. Indeed, they cannot after all three Sixth Circuit judges in *L.W. agreed* on this important point. DN 73-1, Opinion, at *4–6, 17. Tellingly, the Plaintiffs' response and amended response do not even mention this binding aspect of *L.W.* So under *L.W.*, the only dispute is whether the preliminary injunction should continue to benefit the Plaintiffs alone. It should not.

The most important factor in whether a stay is appropriate—what *L.W.* called "the first among equals"—is likelihood of success on the merits. *Id.* at *4 (citing to *Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020)). Considering the reasoning of *L.W.*, there can be no doubt that the Plaintiffs "are unlikely to prevail on their due process and equal protection claims." *Id.* at *6. The Sixth Circuit so held in *L.W.* The Plaintiffs' responses fail to make a colorable argument to the contrary.

The most the Plaintiffs can muster is to claim that SB 150 does not regulate a medical treatment because it does not contain the phrase "gender dysphoria." But *L.W.* did not impose a magic-words requirement. And SB 150's prohibition is substantively analogous to that in the Tennessee statute. Simply reading the two provisions side by side shows as much. *Compare* Tenn. Rev. Code Ann. § 68-33-103(a)(1), *with* Ky. Rev. Stat. § 311.372(2)(a)–(b). The Plaintiffs also halfheartedly

2

reference the Sixth Circuit's decision in *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004). Yet they neglect to mention that *L.W.* considered that very decision. DN 73-1, at *13 ("*Smith v. City of Salem* does not move the needle either.").

*L.W.* also mandates a finding of irreparable harm (*id.* at *8) to the Commonwealth. The Plaintiffs quibble by saying that some state officials in Kentucky do not want to enforce SB 150 while this litigation proceeds. But the Plaintiffs cite no precedent explaining why that matters. That's because precedent is against them. *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020) ("[A]*ny time* a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (emphasis added) (citation omitted)). In any event, unlike Attorney General Daniel Cameron, Ky. Rev. Stat. § 15.020, those other state officials do not speak for the Commonwealth in court.

The only real way that Plaintiffs distinguish *L.W.* is to note that SB 150 differs from the Tennessee law because the latter allows existing treatments to continue until March 31, 2024.[1] To be clear, this difference concerns only one of the four factors relevant to whether a stay is appropriate. It doesn't relate to the most important factor in the inquiry—the merits.

It is true that SB 150's continuing-treatment exception is different than Tennessee's. SB 150 does not specify a firm end date by which continuing treatments must end. Instead, it operates more generally to allow treatments to

---

[1] This argument can only apply to JM Does 1–6, given that JM Doe 7 is not currently taking cross-sex hormones or puberty blockers. Compl. ¶ 12, DN 2. As a result, the preliminary injunction must be stayed as to JM Doe 7.

continue "for a period during which the minor's use of the drug or hormone is systematically reduced." Ky. Rev. Stat. § 311.372(6). Thus, just like Tennessee's law, SB 150 does not require children currently receiving prohibited treatments to cease those treatments immediately. It reasonably gives doctors a window without a specified end date to wind down those treatments. Thus, as in *L.W.*, this feature of SB 150 "lessens the harm to those minors who wish to continue receiving treatment." DN 73-1, at *14.

Any harm to the Plaintiffs is further tempered by how quickly the Sixth Circuit intends to resolve the Commonwealth's appeal from this Court's preliminary injunction. In *L.W.*, the Sixth Circuit stated that it would resolve Tennessee's appeal by September 30, 2023—less than 90 days from now. *Id.* at *15. Importantly, the Commonwealth's appeal has now been consolidated with *L.W.* The question thus becomes whether the Plaintiffs' alleged harm between now and September 30 warrants leaving the Court's preliminary injunction in place as to the Plaintiffs. It does not. In fact, SB 150's continuing-treatment exception does not set a definitive end date for the Plaintiffs to continue receiving prohibited treatments as long as they are systematically reduced. And September 30 is just around the corner.

The Plaintiffs of course believe this isn't enough. Their alleged harms, however, are contested and may not even materialize by the time the Sixth Circuit rules on this matter. Commw. Resp. Pls.' Mot. PI at 23–24, DN 47; Commw. Mot. Stay at 12–13. In any event, the Sixth Circuit spoke to this very concern in *L.W.*, reasoning that "elected representatives made these precise cost-benefit decisions

4

and did not trigger any reasons for skeptical review in doing so." DN 73-1, at *14. As a result, *L.W.* compels this Court not to second-guess the Kentucky General Assembly's determination that SB 150's continuing-care exception is sufficient to address any harms to the Plaintiffs.

At the very end of their amended response, the Plaintiffs suggest an evidentiary hearing. That's just a delay tactic to avoid the inescapable result *L.W.* has on their case. The Plaintiffs have had ample chance to provide whatever evidence they deem fit. The Commonwealth's emergency motion has been pending for almost two weeks. The Court should resolve it immediately.

For these reasons, the Court should stay its injunction pending the outcome of the Commonwealth's appeal pending before the Sixth Circuit Court of Appeals.

Respectfully submitted,

Daniel Cameron
ATTORNEY GENERAL

/s/ Jeremy J. Sylvester
Victor Maddox (KBA No. 43095)
Heather L. Becker (KBA No. 94360)
Jeremy J. Sylvester (KBA No. 92771)
Alexander Y. Magera (KBA No. 97708)
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Victor.Maddox@ky.gov
Heather.Becker@ky.gov
Jeremy.Sylvester@ky.gov
Alexander.Magera@ky.gov
*Counsel for the Commonwealth of Kentucky*
 *ex rel. Attorney General Daniel Cameron*

5

## CERTIFICATE OF SERVICE

I certify that on July 12, 2023, the above document was filed with the CM/ECF filing system, which electronically served a copy to all counsel of record.

<u>/s/ Jeremy J. Sylvester</u>
*Counsel for the Commonwealth of Kentucky*
*ex rel. Attorney General Daniel Cameron*